UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

| | |
|---|---|
| TAMMY J. SCOTT ROBINSON, Administrator of the Estate of ANTHONY SCOTT, Deceased,<br><br>         Plaintiff,<br><br> - against -<br><br>THE CITY OF NEW YORK, et al.,<br><br>         Defendants. | No. 1:23-cv-09521<br><br>**DECLARATION OF DAVID B. RANKIN IN SUPPORT OF MOTION FOR SETTLEMENT APPROVAL** |

------------------------------------------------------------------- X

    DAVID B. RANKIN, an attorney duly admitted to practice before this Court, declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

    1.  I am a Partner at Beldock Levine & Hoffman, LLP, and I represent the Plaintiff in the above-captioned action, and in the related action pending in the Supreme Court of the State of New York, County of Bronx, entitled *Tammy J. Scott Robinson, Administrator of the Estate of Anthony Scott, Deceased v. The City of New York, Captain Doe, and C.O.s Does 1-5*, Index No. 800516/2023E ("State Case").

    2.  I am well-familiar with these proceedings, and I submit this declaration in support of Plaintiff's Motion for Settlement Approval.

    3.  The Court is well-familiar with the facts of this case, having presided over settlement negotiations.

**I.  The Court is Authorized to Grant the Requested Relief**

    4.  This Court has jurisdiction to issue a compromise order and authorize Ms. Scott Robinson to accept the terms of the proposed settlement. Section 5-4.6 of the New York Estates Power and Trust Law ("EPTL") expressly authorizes "[t]he court in which an action [concerning the death] of a decedent is pending" to issue a compromise order. The Letters of Administration issued to Ms. Scott Robinson authorizing her to perform the duties of the Administrator of her

brother's Estate expressly provide that "Tammy Joy-Scott Robinson both [in] her individual and fiduciary capacity, as well as any attorney who represents her in either capacity, shall not permit the collection or receipt of the proceeds from any, action instituted or settled pursuant to the authority granted by these letters without the further order of this court or a court of competent jurisdiction pursuant to EPTL Sec. 5-4.6." July 19, 2025 Decl. of Tammy J. Scott Robinson, Ex. 1 (emphasis added). These Letters are still in full force and effect, and Ms. Scott Robinson is qualified and still acting as Administrator.

5. In *Pollicina v. Misericordia Hosp. Med. Cntr.*, 82 N.Y.2d 332 (1993), the New York Court of Appeals held that, "[w]here the action is pending in a Federal District Court, that court has jurisdiction concurrent with that of the Surrogate's Court." 82 N.Y.2d at 338 n.2 (citing Rohan, Practice Commentary, McKinney's Cons. Laws of N.Y., Book 17B, E.P.T.L. § 5-4.6, at 595-596 (quoting *Matter of Franco*, 108 Misc. 2d 1084, 1087-1089 (Surr. Ct. Bronx Cnty. 1981)).

6. *Pollicina* also noted that "[t]he suggestion that the Surrogate has a mandatory role to play in the settlement of wrongful death actions has no support in EPTL 5-4.6" because "that statute clearly and unequivocally confers the power of approval upon 'the court in which [the] action for [wrongful death] … is pending.'" 82 N.Y. at 337-38; *see also id.* at 338 ("It is difficult to imagine a clearer expression of the Legislature's intention to leave the power to approve settlements in the hands of the court in which the wrongful death action is pending, in this case the Supreme Court.").

7. Citing *Pollicina*, the Second Circuit has expressly acknowledged, "[i]n New York the Surrogate's Courts share concurrent subject matter jurisdiction with the state's court of general jurisdiction, the Supreme Court," and "[t]here thus exists no probate jurisdiction belonging

exclusively to the Surrogate's Court for the District Court improperly to usurp." *See Moser v. Pollin*, 294 F.3d 335, 341 (2d Cir. 2002) (citations omitted).

8. New York state trial courts have recognized and applied *Pollicina*'s holdings. In *Gurbuzturk v. Jamrom*, No. 805284/2013, 2018 N.Y. Misc. LEXIS 1710 (N.Y. Cnty. Sup. Ct. May 10, 2018), the New York Supreme Court, which had overseen the plaintiff's wrongful death claim, held that it could issue a compromise order where the letters of administration issued by the surrogate's court limited the plaintiff-administrator's power "to collect or compromise or exercise any other powers until the further order of this court, or the order of any court of competent jurisdiction." 2018 N.Y. Misc. LEXIS 1710, at *4 (citing E.P.T.L. § 5-4.6).

9. Courts in this District and other districts throughout New York have granted applications brought under E.P.T.L. § 5-4.6. *See, e.g.*, *Roundpoint v. Catalyst Aviation, LLC*, No. 19-cv-0647 (DJS) (Dkt. 64) (N.D.N.Y. Mar. 17, 2022); *Brown v. City of N.Y.*, No. 15-cv-4091 (PKC) (Dkt. 282) (S.D.N.Y. June 1, 2020); *Bah v. City of N.Y.*, No. 13-cv-6690 (PKC) (KNF) (Dkt. 318) (S.D.N.Y. May 2, 2019); *Pilipenko v. City of N.Y.*, No. 15-cv-6053 (NG) (Dkt. 59) (E.D.N.Y. July 21, 2017).[1]

10. Accordingly, this Court has the authority to enter a compromise order pursuant to EPTL § 5-4.6 and authorize Ms. Scott Robinson to accept the City's settlement offer.

**II. The Court Should Approve the Settlement**

11. Based on the facts of this case and decisions in similar matters, the entry of a settlement with Defendants for upfront cash and future periodic payments at a total cost to the City of New York on behalf of itself and all Defendants in the sum of Two Million and Six Hundred

---

[1] These orders are attached hereto as Exhibit 1.

Thousand Dollars and 00/100 ($2,600,000.00) is a fair and adequate resolution of Plaintiff's claims in this matter and the related State Case.

12. Plaintiff's counsel understands that this amount is the highest amount that Defendants are willing to pay to resolve this matter now.

13. Resolving this matter now for this amount is unquestionably in the best interest of the Estate and the distributees of the Estate.

### III. The Court Should Approve Payment of Attorney Fees and Reimbursement of Litigation Expenses to Plaintiff's Counsel

14. In addition to determining whether the proposed settlement is adequate, the Court must approve attorneys' fees and litigation expenses. *See* EPTL § 5-4.6(a); *see also Roundpoint*, No. 19-cv-0647 (DJS) (Dkt. 64 at 2) ("It is also the Court's obligation to review the proposed $2,250,000.00 in attorneys' fees, expenses, and litigation costs, requested by Plaintiff's counsel."); *Cannon v. Corr. Med. Care, Inc.*, No. 9:15-CV-1417 (DJS), 2017 U.S. Dist. LEXIS 205367, at *4 (N.D.N.Y. Dec. 14, 2017) ("It is also the Court's obligation to review the proposed attorney's fee requested by Plaintiff's counsel.").

15. Ms. Scott Robinson retained Beldock Levine & Hoffman LLP (BLH) and entered into a Retainer Agreement with BLH as Administrator of Mr. Scott's Estate on January 10, 2023. We filed the Complaint in this matter on October 30, 2023, and have continued to work on this case ever since.

16. Ms. Scott Robinson's retainer authorized her attorneys to incur all reasonably necessary litigation expenses, for which they would be reimbursed from any sums recovered; and agreed to pay her attorneys a legal fee of the greater of "one-third of any and all amounts recovered . . . " or "in the event that attorneys' fees are awarded by the Court or received in settlement, Attorneys' fees shall constitute the greater of: (a) the amount of the attorneys' fees

awarded/received, or (b) one-third of the combined total of the attorneys' fees awarded/received and the amount recovered, taxable costs and economic benefit received by way of judgment or settlement."

17. Accordingly, we also ask the Court to authorize reimbursement of litigation expenses from the gross settlement proceeds, which is consistent with our retainer agreement with Ms. Scott Robinson. We have incurred $11,445.32 in litigation expenses, which includes significant expenses from an expert. Spreadsheets of our expenses are attached hereto as Exhibit 2. The receipts are attached as Exhibit 3. We ask the Court to approve payment for these expenses.

18. One-third of the gross settlement cost equals $866,666.67. Given the extensive work that our firm performed in this matter, we ask the Court to approve this contingent legal fee, which is consistent with our retainer agreement with Ms. Scott Robinson.

19. Whether calculated based on the net sum, after expenses are deducted, or the gross sum, "a legal fee of one-third . . . is reasonable in a wrongful death contingency case." *Cai v. Cream-O-Land Dairies*, No. 20 CV 1053 (LB), 2021 U.S. Dist. LEXIS 254828, at *4 (E.D.N.Y. Jan. 25, 2021) (citing 22 N.Y.C.R.R. § 603.25(e); *Dullard v. Berkeley Assocs. Co.*, 606 F.2d 890, 896 (2d Cir. 1979)).

20. Courts in this district and other districts in New York have approved a one-third contingency fee in wrongful death cases. *See Roundpoint*, No. 19-cv-0647 (DJS) (Dkt. 64 at 2-3); *Moises v. Riverbank Rest. LLC*, No. 17-cv-09943 (SDA), 2018 U.S. Dist. LEXIS 215157, at *2 (S.D.N.Y. Dec. 21, 2018); *Brown*, No. 15-cv-4091 (PKC) (Dkt. 282 at 2); *Bah*, No. 13-cv-6690 (PKC) (KNF) (Dkt. 318 at 2); *Cannon*, 2017 U.S. Dist. LEXIS 205367, at *4; *Pilipenko*, No. 15-cv-6053 (NG) (Dkt. 59 at 1-2) (citing *Estate of Marshall v. City of New York*, 2012 WL 2320764, at * 1 (E.D.N.Y. June 19, 2012)).

21. The payment of any attorneys' fees, costs and/or other expenses shall be made from the above referenced settlement cost of Two Million and Six Hundred Thousand Dollars and 00/100 ($2,600,000.00), and in no event shall the City of New York or the other Defendants be required to pay any additional sums in this matter.

22. It is respectfully requested that the Court direct that the City of New York, on behalf of itself and all Defendants, shall, pursuant to CPLR §5003-a(b), pay within 90 days of receipt of a copy of the Order, and the General Release and/or the Settlement Agreement and Release and Stipulation of Discontinuance, the sum of One Million Four Hundred Forty-Six Thousand Seventy Dollars and 10/100 ($1,446,070.10), representing the up-front cash portion of the settlement sum paid to Beldock Levine & Hoffman LLP which shall be deposited by Beldock Levine & Hoffman LLP, in an interest bearing trust account for the benefit of the distributees to be distributed as directed herein pursuant to EPTL §5-4.6(a) (1) and a subsequent Decree of the Bronx County Surrogate's Court.

23. It is further respectfully requested that the Court direct that attorneys' fees for the prosecution of the action for wrongful death, inclusive of disbursements, plus the filing fee of the Bronx County Surrogate's Court, be immediately payable from the escrow account upon submission to this Court of proof that a Petition has been filed in the Bronx County Surrogate's Court for allocation of the causes of action for personal physical injuries and wrongful death and for distribution of the net recovery on behalf of the decedent's estate.

24. It is further respectfully requested that the Court direct that the balance of that portion of the settlement to be held in escrow, to wit, the sum of $567,958.11, less the filing fees payable to the Bronx County Surrogate's Court, shall remain in escrow until such time as the Bronx County Surrogate's Court has issued an order allocating and distributing the balance of the settlement

proceeds and determining the amount for administrator fees and the amount to be paid into any further structured settlement in addition to the agreed upon structured settlement as described in the Order.

25. It is further respectfully requested that the Court direct that the remainder of the proceeds of the settlement, to wit, $1,153,929.90, shall be used by the City of New York, on behalf of itself and all Defendants, to fund the future periodic payment portion of this settlement, and the City of New York, on behalf of itself and all Defendants, shall issue a check, draft or wire transfer made payable to or wired to Pacific Life & Annuity Services, Inc. in the sum of One Million One Hundred Fifty-Three Thousand Nine Hundred Twenty-Nine and 90/100 ($1,153,929.90) Dollars and, if payment is made by check or draft, said check or draft shall be delivered to Kipnes Crowley Group LLC, one of the structured settlement brokers placing the case.

26. It is further respectfully requested that the Court direct in the event that the Surrogate's Court modifies the distribution of the structured settlement periodic payments including, but not limited to, the terms, amounts, dates, or payees, Plaintiff/Administrator, and City of New York, on behalf of itself and all Defendants, shall execute such additional and/or amended settlement agreements, assignment agreements and such other documents as may be reasonably required to effectuate the structured settlement as approved in the Final Decree of the Surrogate's Court.

**IV.    Conclusion**

27.    If the Court grants Ms. Robinson Scott's petition, we will promptly file a petition in the Bronx County Surrogate's Court to determine the appropriate apportionment and distribution of the remaining settlement proceeds, including costs and administrator's commission, expenses, and funeral costs, and to approve a proposed structured settlement to distributees of the decedent's estate.

**WHEREFORE**, based on the foregoing and all of the pleadings and proceedings had herein, I request the Court grant the Plaintiff's petition for a compromise order and issue an order authorizing Ms. Robinson Scott to settle her claims for future periodic payments and upfront cash at a cost in the total sum of Two Million and Six Hundred Thousand Dollars and 00/100 ($2,600,000.00) to be paid by the City of New York on behalf of itself and all Defendants, and fixing an attorneys' fee of $866,666.67 and reimbursement of expenses of $11,445.32 for Beldock Levine & Hoffman, LLP.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

New York New York
July 30, 2025

DAVID B. RANKIN