UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

TAMMY J. SCOTT ROBINSON, Administrator of
the Estate of ANTHONY SCOTT, Deceased,

                            Plaintiff,

- against -

THE CITY OF NEW YORK, et al.,

                            Defendants.

------------------------------------------------------------- X

No. 1:23-cv-09521

**VERIFIED PETITION FOR COMPROMISE ORDER**

Tammy J. Scott Robinson, Plaintiff in the above-captioned case, declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the court-appointed Administrator of the Estate of my late brother, Anthony Scott, and in that capacity, I am the Plaintiff in the above-captioned action.

2. I submit this declaration in support of my motion for authority pursuant to New York Estates Power and Trust Law ("EPTL") § 5-4.6 to enter a compromise order accepting the settlement terms for future periodic payments and up-front cash at a cost in the total sum of $2,600,000.00, to be paid by the City of New York.

3. On December 23, 2022, the Bronx County Surrogate granted me Letters of Administration for my brother Anthony's Estate. A copy of the Letters is attached here as **Exhibit 1**. The Letters were limited, in relevant part, by providing that I "shall not permit the collection or receipt of the proceeds from any action instituted or settled pursuant to the authority granted by these letters without the further order of this court or a court of competent jurisdiction pursuant to EPTL Sec. 5-4.6." To date, the Letters of Administration have not been revoked and are presently in full force and effect.

4. My brother attempted suicide in a holding pen in New York City Department of Correction custody at the Manhattan Courthouse on October 14, 2021, while he was awaiting

1

transfer to Rikers Island. He was resuscitated and transported to New York Presbyterian Hospital. However, on October 16, 2021, Anthony was declared brain dead.

5.     Two days later, on October 18, 2021 at 3:02 pm, Anthony was removed from a ventilator at New York Presbyterian Hospital. (Medical records related to his death are attached as **Exhibit 2**.) He did not regain consciousness at the hospital.

6.     All of the proceeds of the settlement of the claim are to be allocated to the action for wrongful death since Anthony never regained consciousness following the occurrence complained of herein.

7.     The Office of the Chief Medical Examiner, City of New York ("OCME") conducted an autopsy on October 19, 2021 and issued its findings on March 3, 2022. Said findings are attached as **Exhibit 3**. The OCME concluded that the manner of Anthony's death was "suicide (hanged self)." The OCME identified a number of injuries from the hanging as well as from resuscitative efforts, including "cardiopulmonary resuscitation, endotracheal intubation, and intravenous catheter placements." (See attached **Exhibit 3**.)

8.     A combined action for Anthony's wrongful death and conscious pain and suffering was commenced against the Defendant, City of New York, and the individual corrections officers in the Southern District of New York on October 30, 2023 (the "Federal Action"). (**Exhibit 4**.)

9.     On January 11, 2023, I brought a case alleging various state law claims against the City of New York, in the Supreme Court, Bronx County, Index No. 800516/2023E (the "State Action"). (**Exhibit 5**.)

10.    On April 12, 2024, I also brought a case against New York Presbyterian Hospital alleging medical malpractice. (the "Medical Malpractice Action.") (**Exhibit 6**.)

11. After filing the Federal Case, the Court ordered the Parties to attend a settlement conference. The Settlement Conference was held on February 20, 2025. After extensive negotiations, Magistrate Judge Barbara Moses recommended that the Defendants settle the Federal Action and the State Action for future periodic payments and up-front cash at a cost in the total sum of $2,600,000.00, to be paid by the City of New York. We accepted the settlement in principle at that conference, which was confirmed in writing by the City of New York. *See* attached **Exhibit 7**.

12. The Parties agreed that this settlement would resolve the Federal and State matters.

13. The Medical Malpractice Action will continue.

14. Anthony had no assets prior to his death. A revised List of Assets listing the settlement is attached as **Exhibit 8**.

15. An investigation of the personal resources of Anthony has been undertaken and it has been discovered that he had no assets.

16. I believe that it is in the best interests of the distributees and the estate and those interested therein to accept the settlement so offered and that this is the largest amount that can be obtained without further litigation as against these Defendants.

17. The grounds of my belief are that the amount is in line with other cases involving the wrongful death by government actors. Based on the advice of my counsel, who has many years of experience litigating federal civil rights suits and government and municipality-involved wrongful death suits in New York, any larger recovery is highly unlikely.

18. Anthony, at the time of death, left the following survivors:

| Name | Relationship | Date of birth | Present age |
|---|---|---|---|
| Anthony Robert Wiley | Nonmarital child (son) | November 24, 1982 | 42 |
| SeQueena Wiley-Taylor | Nonmarital child (daughter) | August 26, 1984 | 40 |

19. On January 10, 2023, I retained David Rankin, Esq. of Beldock Levine & Hoffman LLP ("BLH") as the Estate's attorney. A copy of the retainer agreement with BLH is attached as **Exhibit 9**; a copy of the Estate's Retainer Statement BLH filed with the Office of Court Administration, bearing OCA Number #31241406 and dated May 28, 2025, is attached as **Exhibit 10**.

20. On December 23, 2022, I became Administrator of the Estate of Anthony Scott. (**Exhibit 1**.) The issued letters state that "Tammy Joy-Scott Robinson both [in] her individual and fiduciary capacity, as well as any attorney who represents her in either capacity, shall not permit the collection or receipt of the proceeds from any, action instituted or settled pursuant to the authority granted by these letters without the further order of this court or a court of competent jurisdiction pursuant to EPTL Sec. 5-4.6."

21. BLH litigated the case for over two years while simultaneously engaging in settlement negotiations. BLH pursued all of the tasks needed to negotiate the Estate's claims. This included obtaining necessary discovery, and, ultimately, successfully negotiating the settlement offer described herein. In view of the results BLH achieved, I would request the Court to approve a fee for the firm according to the terms of our retainer agreement as follows: Of the gross settlement cost of $2,600,000.00, that a fee of 33 1/3% first be deducted, which would amount to attorneys' fees in the amount of $866,666.67 and that, of the balance of $1,733,333.33, disbursements in the sum of $11,445.32 be deducted, leaving: $1,721,888.01.

22. Mr. Rankin's declaration includes itemized lists and receipts showing the expenses incurred by Beldock Levine & Hoffman LLP in prosecuting this action (and the related State Action). I believe these expenses, which total $11,445.32, are reasonable litigation costs for these actions.

23. I have been advised that the net settlement proceeds must be allocated to the claims that will be resolved by the proposed settlement. As explained by my counsel, these claims include civil rights claims, survival claims for conscious pain and suffering, and a claim for the wrongful death of my brother. I have been further advised that the proceeds allocated to the federal and state civil rights and survival claims will become assets of the Estate and will be distributed according to the laws of intestacy and that the proceeds of the wrongful death claim will be allocated according to the pecuniary loss sustained by Anthony's children.

24. Based on the advice of counsel, for the reasons explained in the accompanying affirmation of counsel, I request the following allocation of the settlement proceeds: $2,600,000.00 for the wrongful death claim.

25. It is respectfully requested that the Court direct that the City of New York, on behalf of itself and all Defendants, shall, pursuant to CPLR §5003-a(b), pay within 90 days of receipt of a copy of the Order, and the General Release and/or the Settlement Agreement and Release and Stipulation of Discontinuance, the sum of One Million Four Hundred Forty-Six Thousand Seventy Dollars and 10/100 ($1,446,070.10), representing the up-front cash portion of the settlement sum paid to Beldock Levine & Hoffman LLP, which shall be deposited by Beldock Levine & Hoffman LLP, in an interest bearing trust account for the benefit of the distributees to be distributed as directed herein pursuant to EPTL §5-4.6(a) (1) and a subsequent Decree of the Bronx County Surrogate's Court.

26. It is further respectfully requested that the Court direct that attorneys' fees for the prosecution of the action for wrongful death, inclusive of disbursements, plus the filing fee of the Bronx County Surrogate's Court, be immediately payable from the escrow account upon submission to this Court of proof that a Petition has been filed in the Bronx County Surrogate's Court for allocation of the causes of action for personal physical injuries and wrongful death and for distribution of the net recovery on behalf of the decedent's estate.

27. It is further respectfully requested that the Court direct that the balance of that portion of the settlement to be held in escrow, to wit, the sum of $567,958.11, less the filing fees payable to the Bronx County Surrogate's Court, shall remain in escrow until such time as the Bronx County Surrogate's Court has issued an order allocating and distributing the balance of the settlement proceeds and determining the amount for administrator fees and the amount to be paid into any further structured settlement in addition to the agreed upon structured settlement as described in the Order.

28. It is further respectfully requested that the Court direct that the remainder of the proceeds of the settlement, to wit, $1,153,929.90, shall be used by the City of New York, on behalf of itself and all Defendants, to fund the future periodic payment portion of this settlement, and the City of New York, on behalf of itself and all Defendants, shall issue a check, draft or wire transfer made payable to or wired to Pacific Life & Annuity Services, Inc. in the sum of One Million One Hundred Fifty-Three Thousand Nine Hundred Twenty-Nine and 90/100 ($1,153,929.90) Dollars and, if payment is made by check or draft, said check or draft shall be delivered to Kipnes Crowley Group LLC, one of the structured settlement brokers placing the case.

29. It is further respectfully requested that the Court direct in the event that the Surrogate's Court modifies the distribution of the structured settlement periodic payments

including, but not limited to, the terms, amounts, dates, or payees, Plaintiff/Administrator, and City of New York, on behalf of itself and all Defendants, shall execute such additional and/or amended settlement agreements, assignment agreements and such other documents as may be reasonably required to effectuate the structured settlement as approved in the Final Decree of the Surrogate's Court.

30. I understand that in the event any party to the settlement agreement or qualified assignments is incapable of executing additional or supplementary documents due to bankruptcy, insolvency or otherwise, should such documents become necessary at the time a final decree is issued, the original documents shall be deemed amended, nunc pro tunc, consistent with the final decree of the Surrogate's Court.

31. I further understand that the firm of Beldock Levine & Hoffman, LLP, which is to receive payment pursuant to the Order, must continue to act as attorney for the estate until the entry of a final decree in Surrogate's Court.

32. I further understand that the rights, responsibilities and obligations of Defendants are totally extinguished and satisfied upon payment of the sums necessary for the purchase of the annuities, the immediate up-front cash payment, the payment of attorney fees and disbursements, and the signing of the settlement agreement and qualified assignments, and the approval of the Surrogate of Bronx County of the allocation and distribution of the structured settlement.

33. Assuming the Court grants my petition, I will petition the Surrogate's Court to fix the appropriate apportionment and distribution of the remaining wrongful death proceeds, including costs and administrator's commission, expenses, and funeral costs, and to approve a proposed structured settlement to distributees of the decedent's estate.

34. Upon information and belief, there are no medical or hospital bills outstanding, and there are no assignments, compensation claims, or liens filed with me, as Administrator. Should I become aware of any such liens or tax liabilities, I will present those to the Surrogate's Court for payment from the net settlement proceeds.

35. No previous application has been made for the relief sought herein.

36. I have not become interested in the within matter at the instance of the potentially liable tortfeasors or anyone acting on their behalf, directly or indirectly.

**WHEREFORE,** I ask the Court for an order authorizing me to settle all claims against the defendants in the above-captioned matter and related State Action and discontinue these cases in exchange for the payment of future periodic payments and up-front cash at a cost in the total sum of $2,600,000.00, fixing an attorney's fee of $866,666.67 and reimbursement of expenses of $11,445.32 for Beldock Levine & Hoffman, LLP.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July ___, 2025.

_____
TAMMY J. SCOTT ROBINSON

8